**Floyd B. KIRKES, Plaintiff,**

v.

**UNITED STATES of America, and Secretary of Health, Education, and Welfare, a Division thereof, Defendant.**

Civ. A. No. 1099.

United States District Court
W. D. Arkansas,
Hot Springs Division.
March 20, 1968.

**832**

Moses, McClellan, Arnold, Owen & McDermott, Little Rock, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

This is an appeal from a decision of the defendant Secretary denying plaintiff's application for disability insurance benefits. On March 17, 1966, the plaintiff, Floyd B. Kirkes, a resident of Hot Springs, Arkansas, filed his application for disability insurance benefits as provided for in 42 U.S.C.A. §§ 416 and 423, alleging that he became unable to engage in substantial gainful activity on February 15, 1965, because of osteomyelitis and psoriasis. This application was denied both initially and on reconsideration. Plaintiff was granted a hearing which was held on October 18, 1966. The hearing resulted in a hearing examiner's decision denying the claim. Pursuant to plaintiff's request, his claim was considered by the Appeals Council which, in a decision on September 28, 1967, also denied plaintiff's claim. Having exhausted his administrative remedies, plaintiff filed his complaint in this court on October 10, 1967, in which he prayed that the "Court make and enter its order finding that the plaintiff is unable to engage in any substantial gainful occupation and that he is entitled to the foregoing benefits as provided by the pertinent sections of the Social Security Act as herein quoted, and for all other just relief." The defendant has answered, both parties have filed motions for summary judgment and briefs have been submitted.

The plaintiff, 62 years old, has an extensive vocational history, which begins in 1917 when he quit school after the fifth grade and went to work as an office boy for a petroleum company. He remained at this job for ten years. In 1923 and 1924 he worked for his father at a railroad construction camp. From 1925 to 1928 he served as a seaman for several shipping firms. In 1928 and 1929 he farmed as a sharecropper. From 1930 until 1941 he was a laborer and supply clerk for the Lone Star Gas Company. During the period from 1941 until 1944 the plaintiff was employed in a defense plant as a timekeeper and a material man. In 1945 the plaintiff went into business for himself, operating a liquor store in Joplin, Missouri. At one time he owned three stores and employed as many as ten people. In 1957 he sold the stores and moved to northern Minnesota where he purchased a fishing camp. During the busy season—May 15 to October 15—he employed about ten persons. The operation of the camp consisted of renting cottages and boats, selling bait and other fishing equipment, and operating a cafe. He handled the managerial duties and served beer while his wife cooked for the cafe. All of the heavy work was done by the employees. The fishing camp operation lasted until 1965 when the plaintiff sold out and moved to

his present home on Lake Hamilton in Hot Springs, Arkansas. The plaintiff is presently unemployed.

The plaintiff's medical history, according to his testimony, is as follows: In 1961 the plaintiff entered Worrall Methodist Hospital in Rochester, Minnesota, for treatment of psoriasis. He received treatment and the condition improved to the extent that he was able to return to the fishing camp, but his ability to work was substantially and seriously limited. He returned to the hospital in January 1964 for more treatment. In 1965, on the advice of his dermatologist, the plaintiff sold his camp and moved to a warmer climate, to-wit: Hot Springs, Arkansas. Since that time the plaintiff has suffered from the disease, having periods of exacerbation followed by periods of remission. No physician had been able to cure the disease, but the plaintiff does receive some relief from medication which includes application of salves several times daily, a daily thirty-minute soak in a tar bath, and wrapping the affected areas with Saran wrap at night. He also receives weekly ultraviolet treatments and occasional sun baths. The periods of exacerbation and remission follow no set patterns, but come and go irregularly. The condition does worsen, however, when the plaintiff is active or under stress or tension. During these periods most of his body is affected, including his arms, hands, and most of the area from the waist down, with these areas becoming red, scaly, and producing an itching sensation.[1]

The transcript contains several medical exhibits with the essential information contained therein being as follows: Dr. D. B. Stough, III, of Hot Springs, submitted a report (TR 86) dated March 23, 1966. Under the heading "History" it

is stated: "Psoriasis Vulgaris over elbows and knees. Therapy—Balnatar for bathes, Cordran ointment, steroid injections—Response—excellent." In a later report (TR 90) dated June 13, 1966, Dr. Stough repeated the diagnosis of psoriasis vulgaris and stated that the plaintiff responded "very adequately to treatment but this can be aggravated by nerves and tension." The report also stated that sunshine and rest were recommended.

In a letter dated June 24, 1966 (TR 94), Dr. R. K. Winkelmann of Mayo Clinic, Rochester, Minnesota, indicated that he had treated the patient for psoriasis, and stated that he "would not consider his psoriasis to be disabling."

A letter of October 17, 1966 (TR 98), again from Dr. Stough states that the "patient has been advised to limit his activity and avoid alcohol and episodes of tension.

After the decision of the hearing examiner and prior to the submission of the case to the Appeals Council, three more medical reports were submitted.

Dr. G. Thomas Jansen, a skin specialist in Little Rock, Arkansas, in a letter dated March 2, 1967 (TR 100), offered the following:

"Mr. Kirkes was seen by me on one visit on January 19, 1967. At that time, he gave a history of having had a psoriatic eruption for many years. He had received treatment consisting of crude coal tar and sun light or ultra violet light at the Mayo Clinic in 1961 and again in 1964. Since that time, he had been seeing Dr. D. B. Stough, a dermatologist in Hot Springs, for continuing control of his problem. In addition to his skin complaints, he also has had a problem with a recurring arthritic condition since 1950. It would appear that this is considered to

---

[1.] The record reveals further that the plaintiff has a history of suffering from rheumatoid spondylitis, arthritis, and osteomyelitis. In the words of the plaintiff these conditions are not disabling, and the basis for his claim arises sole-

ly from the psoriasis. (TR 50.) Because of the plaintiff's frankness in this respect and in view of his vocational history, the court is convinced that the plaintiff is not a malingerer.

be a rheumatoid arthritis rather than a psoriatic arthropathia. A deforming type of osteoarthritis has also been present, involving his right arm, which has caused a deformity of this arm and a fixation of the right elbow, reducing greatly its activity.

\* \* \* \* \* \*

"The patient's sedementation rate corrected was 49 mm. His RA test was positive 1:20 and the roentgen examination of his hands was reported by Drs. Gray, Bohnen and Springer of Hot Springs as, 'Arthritic changes as described are present and would appear to fit more that of rheumatoid arthritis. There are none of the diagnostic criteria of psoriatic arthritis.'

'It is my impression, then, that this patient has persisting psoriasis vulgaris and he would seem to have intermittent recurring bouts of arthritis that are rheumatoid in character, and it is my considered opinion that arthritis of this type, as well as psoriatic arthropathia, occurs in greater incidence than by chance alone with psoriasis vulgaris. It would appear that the severe osteoarthritic change in his right arm, the rheumatoid arthritis, and the psoriasis vulgaris combined have made gainful employment impossible"

Dr. T. S. Arrington, a dermatologist in Pine Bluff, Arkansas, stated in his report (TR 102) that he felt that any disability would depend on the degree of the involvement of the joints and to a lesser extent the nail involvement. He stated further: "I do not think his skin findings are disabling."

Dr. Michael N. Harris, an internist from Little Rock, examined the plaintiff and in a letter dated May 19, 1967 (TR 104) set forth his findings in some detail. He concluded his report with the following:

"I feel this patient has fairly widespread disease, both with his dermatologic problem and generalized arthralgias and arthritides. He, at this time, I feel is most likely suffering from a form of psoriatic arthritis, although he does not have the characteristic changes which we frequently see in this disease. He has many of the complaints. His rheumatoid arthritis test was negative. We do not frequently see sero-negative rheumatoids, although they are seen. I feel that this patient's arthritis should improve as his psoriasis is controlled. In reading of the dermatologist opinion about increased activity, increased tension, and fatigue on the psoriatic condition, I also agree that the patient should not have any type of activity which would necessitate marked increased physical activity."

As previously indicated the hearing examiner denied the plaintiff's claim and the decision was affirmed by the Appeals Council. The essence of the hearing examiner's decision is found on page 6 of that decision (TR 21), where he stated:

"Certainly there is no intimation in the medical reports that claimant is disabled for the light jobs he has followed in the past by reason of the presence of rather extensive psoriasis. This claimant, despite a rather meager education, has acquired skills and qualities of leadership which have permitted him to direct the activities of a number of people in employment situations and no good reason is medically shown for his terminating such relationships. In short, it is believed that this claimant could operate a fish camp, a tourist court, and could certainly operate a liquor store. Claimant has had experience in all these activities, and has kept the necessary records in conduct of these businesses. The evidence shows that claimant is ambidextrous with respect to writing ability, and he could, in addition to operating a fishing camp, a tourist court, and serving as a liquor store clerk, engage in tabulating activities in connection with construction, agriculture and a number of other jobs common to our economy. The claimant is able to drive an automobile and,

insofar as the medical evidence is concerned, is ambulatory. He retains good use of his senses, and has had a great deal of practical experience in maintaining records and directing the work activities of others. In these circumstances it is not believed that claimant is disabled as contemplated by the disability provisions of the Social Security Act."

In the decision of the Appeals Council it was pointed out on page 5 (TR 6) that, "While the evidence shows that there have been interludes of exacerbations of this skin condition (followed by remissions), there are no indications that symptoms of severe itching, chronic scaling, bleeding, etc., continued for a protracted period of time."

Under "Summary and Evaluation of the Vocational Data" the Council stated:

"The claimant has been advised to limit his activities as well as avoid episodes of tension. In this regard, the claimant reported that the physical requirements connected with the operation of the fishing camp were minimal as most of his duties were managerial and supervisory. Therefore, since the demands of this work, physically, mentally, and emotionally are relatively light, one can logically conclude that the claimant could perform the duties of his former work as a fishing camp operator.

"Concerning his duties as a liquor store operator, the claimant indicated that he ordered supplies and supervised sales, having several employees handle the sale of liquor. Again, it would be reasonable to believe that the claimant's duties relating to this work would be allied to those associated with the operation of the fishing camp inasmuch as the claimant's principal function was managing and supervising those people who worked for him.

"It is believed that the greater weight and preponderance of the medical and other evidence of record clearly and convincingly supports the conclusion that neither the claimant's skin dis-order nor his arm impairment, singly or in combination, are of such severity as to preclude his engaging in substantial gainful activity. The Council is of the view that the claimant can engage in substantial gainful activity without detriment to his health and is capable of performing the duties of his former work as a fishing camp operator or his allied occupation as a liquor store operator."

"The factors which are to be considered by the Secretary in determining whether or not benefits should be granted, and the factors which are to be considered by this court in determining whether to affirm or reverse the opinion of the Secretary have been established through a long line of decisions." Jones v. Gardner, 282 F.Supp. 56 (W.D.Ark., Ft. Smith Div., Aug. 13, 1966). These factors were set out specifically in Marion v. Gardner, (8 Cir. 1966) 359 F.2d 175, at 179–180:

" * * * that an applicant has the burden of establishing his claim; that the Social Security Act is remedial and is to be construed liberally; that the Secretary's fact findings and the reasonable inferences to be drawn from them are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g); that substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; that the determination of the presence of substantial evidence is to be made on a case to case basis and *on the record* as a whole; that where the evidence is in conflict or subject to conflicting inferences it is for the Appeals Council, on behalf of the Secretary, to resolve those conflicts; that the statutory definition of disability imposes the threefold requirement (a) that there be a medically determinable physical or mental impairment of the type specified by the statute, (b) that there be an inability to engage in any substantial gainful activity, and (c) that the inability be by reason of the impairment; that substantial gainful activity

is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training and experience; and that *the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable or theoretical.*" (Emphasis added.)

The hearing examiner and the Appeals Council have both concluded that the plaintiff is not suffering from a permanent disability which prevents him from engaging in any substantial gainful activity and that the plaintiff, *when realistically judged by his education, training, and experience, has a reasonable possibility of engaging in substantial and gainful activity.* This court, upon reviewing the record as a whole, as required above, cannot agree.

Both of the decisions below recognize that the plaintiff's psoriasis is at times burdensome. The decision that he is not disabled within the meaning of the Act appears to stem from the fact that the condition is not static, i. e., there are periods of remission when the condition clears up almost completely. However, there is no evidence (in fact, all of the evidence is to the contrary) to support the conclusion that the plaintiff has been cured or that the psoriasis will not flare up from time to time in the future. It is these intermittent periods of exacerbation which, in the opinion of the court, render the plaintiff disabled.

The Secretary found that the plaintiff has had experience in managing both fishing camps and liquor stores, and pointed out the fact that several opportunities for such work are available in Hot Springs, Arkansas. This is a mere inference without a basis in the evidence. It is true that the plaintiff, in periods of remission of his illness, might handle the physical chores associated with such employment. But this does not mean that the plaintiff could obtain this type of work. The writer of this opinion is quite familiar with Hot Springs and the economic conditions existing in the area, having held sessions of court there several times a year for more than a quarter of a century. With reference to the so-called "fishing camps," these operations are quite marginal and offer very limited financial gains and no stability. Most of them, if not all, are owner operated because the volume of business will not justify the expense of hiring a full-time manager, and any operation large enough to support an outside manager would be beyond this plaintiff's ability to handle because he would not be able to devote his efforts to the business on a full-time basis.

A similar situation exists with respect to the liquor stores. There are many in the area but there is also no dearth of physically qualified applicants to fill the openings available. Few of the liquor stores are large enough to require a "manager" as such, and none are large enough to support even a clerk who would not be able to guarantee full-time attendance. Any substantial managerial position would doubtlessly call for constant attendance and it is clear that this the plaintiff could not provide. Even during periods of remission constant care must be given to his skin. It requires daily routine medication, and in the event of an exacerbation, which is certainly to be expected, the plaintiff must stop working and rest. It is unreasonable to assume that someone would hire the plaintiff, especially in a managerial capacity, knowing that at any time he might have to leave his work for rest and medication.

It is the opinion of the court that the plaintiff is disabled within the meaning of 42 U.S.C. §§ 416 and 423, and is entitled to disability benefits as claimed in his application.

Therefore, an order is being entered today granting the motion of the plaintiff, denying the motion of the defendant, and remanding the case to the Secretary who shall proceed to grant the plaintiff benefits according to his application.